UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSE J. MARTINEZ, ELIDA ARIAS, JOSEPH D. MARTINEZ, and JESSE L. MARTINEZ<br><br>Plaintiffs,<br><br>v.<br><br>TIMOTHY WEBSTER, JASON COOK, THOMAS MOEBS, TOM FARA, DONNIE SCHWANDT, JOSEPH KNITTEL, and JOHN HALLFORD,<br><br>Defendants. | 1:13-cv-00320 LJO SMS<br><br>MEMORANDUM DECISION AND ORDER RE: DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (Doc. 31) |

## I. PRELIMINARY STATEMENT TO PARTIES AND COUNSEL

Judges in the Eastern District of California carry the heaviest caseloads in the nation, and this Court is unable to devote inordinate time and resources to individual cases and matters. Given the shortage of district judges and staff, this Court addresses only the arguments, evidence, and matters necessary to reach the decision in this order. The parties and counsel are encouraged to contact the offices of United States Senators Feinstein and Boxer to address this Court's inability to accommodate the parties and this action. The parties are required to reconsider consent to conduct all further proceedings before a Magistrate Judge, whose schedules are far more realistic and accommodating to parties than that of U.S. District Judge Lawrence J. O'Neill, who must prioritize criminal and older civil cases.

Civil trials set before Judge O'Neill trail until he becomes available and are subject to suspension mid-trial to accommodate criminal matters. Civil trials are no longer reset to a later date if Judge O'Neill is unavailable on the original date set for trial. Moreover, this Court's Fresno Division randomly and

without advance notice reassigns civil actions to U.S. District Judges throughout the nation to serve as visiting judges. In the absence of Magistrate Judge consent, this action is subject to reassignment to a U.S. District Judge from outside the Eastern District of California.

## II. INTRODUCTION

This case concerns the circumstances surrounding the March 4, 2011 detention of Plaintiffs Joseph D. and Jesse L. Martinez and the arrest of their father, Jose J. Martinez, by Stanislaus County Sheriff's Department (SCSD) officers Jason Cook, Thomas Moebs, Tom Fara, Donnie Schwandt, Joseph Knittel, and John Hallford and Stanislaus County Animal Control Officer Timothy Wester.

## III. PROCEDURAL HISTORY

Plaintiffs filed their complaint on March 1, 2013, alleging that SCSD officers are liable under 42 U.S.C. § 1983 for the seizure of Plaintiffs Joseph D., Jesse L., and Jose J. Martinez and search of their home and vehicle. Compl. ¶ 1. Plaintiffs also allege that officers used excessive force in the detention and arrest of these plaintiffs. *Id.* SCSD Officers filed a motion for summary judgment on March 16, 2015 (MSJ), Doc. 31. Plaintiffs timely filed their opposition April 7, 2015. Mem. of P. & A.'s in Supp. in Opp'n (Opposition), Doc. 34. Defendants replied April 13, 2015. Defs.' Reply to Pls.' Opp'n. (Reply), Doc. 41. The motion was set for hearing April 21, 2015, but the hearing was vacated and the matter submitted for decision on the papers pursuant to Local Rule 230(g).

## IV. FACTUAL BACKGROUND[1]

On March 4, 2011, Wester arrived at Plaintiff's residence in Modesto, California to investigate a neighbor's complaint of a loose and threatening dog. Pls.' Statement of Disputed and Undisputed Facts (PSDUF), Doc. 35 # 1-2. Plaintiff Arias was issued a citation for a loose dog. PSDUF #2. Jose J. cursed at Wester. *Id*. Jose J. alleges that Wester then made a false police report against him, characterizing the

---

[1] Because on summary judgment the evidence of the non-moving party is assumed to be true and disputed facts are construed in the non-movants favor, the Court sets forth the undisputed facts and notes those disagreements of fact that are relevant to this decision.

2

cursing as "terrorist threats" and falsely indicating that Jose J. had a gun. *Id.* Plaintiff Arias recorded some of this interaction on her phone and then left the premises. Arias Decl., Doc. 37-6, ¶¶ 3, 9. Later that day, Officer Cook and several other SCSD officers, including Fara, Moeb and Schwandt, were dispatched to the residence to investigate the issue PSDUF # 3-4, 7, 11, 14. Wester had signed a citizen's arrest form, alleging that Jose J. made a criminal threat. PSDUF # 3. Officers were advised that the situation presented a possible "terrorist threat." PSDUF #6. Cook interviewed Wester and Jose. J. and his sons, Jessie L. and Joseph D. PSDUF #3-4. Officers perceived all three to be "irate and uncooperative." PSDUF #4, 8. Plaintiffs maintain that they had no choice but to obey commands as the officers had guns pointed at them. PSDUF #4, 8. All three were handcuffed while officers conducted a search of the area. PSDUF #4, 8. Jose J. alleges that Cook "slammed the patrol vehicle door" on his ankle as he was placed in the back of a patrol car. PSDUF #4-5. Plaintiffs allege that officers searched the residence and Jesse L.'s vehicle without a warrant. PSDUF # 8-9, 12. Officers state that they made a "security sweep" of the premises, but did not enter the residence. PSDUF # 10, 12. Cook placed Jose J. under arrest and transported him to jail. PSDUF #4. Arias was not present during these events. Arias Decl. ¶ 9. Officer Knittel was on-duty on March 4, 2011 but was not dispatched to the Martinez residence until after Jose J. was arrested and his sons were detained. PSDUF # 13.

## V. **STANDARD OF DECISION**

Summary judgment is proper if the movant shows "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotation marks omitted). A fact is material if it could affect the outcome of the suit under the governing substantive law; "irrelevant" or "unnecessary" factual disputes will not be counted. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248

(1986).

If the moving party would bear the burden of proof on an issue at trial, that party must "affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party." *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007). In contrast, if the non-moving party bears the burden of proof on an issue, the moving party can prevail by "merely pointing out that there is an absence of evidence" to support the non-moving party's case. *Id.* When the moving party meets its burden, the non-moving party must demonstrate that there are genuine disputes as to material facts by either:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).

In ruling on a motion for summary judgment, a court does not make credibility determinations or weigh evidence. *See Anderson*, 477 U.S. at 255. Rather, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* Only admissible evidence may be considered in deciding a motion for summary judgment. Fed. R. Civ. P. 56(c)(2). "Conclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment." *Soremekun*, 509 F.3d at 984.

## VI. ANALYSIS

Defendants argue that the SCSD Officer Defendants are each entitled to summary judgment, but acknowledge that there are disputed factual issues regarding Plaintiff's claims against Wester, the animal control officer. MSJ 1-3.

**A.  Knittel**

Defendants argue that Knittel had no contact with any of the Plaintiffs and only appeared at the

4

residence long enough to confirm that no assistance was needed; thus there is no basis for finding him liable for the search and seizure of Plaintiffs or their property. MSJ at 3. They present evidence in the form of Knittel's own testimony as support for this assertion. PSDUF # 13-14; Decl. of Joe Knittel, Doc. 31-5. Plaintiffs do not dispute these facts or oppose Defendants' argument. PSDUF # 13-14. Therefore, this Court GRANTS Defendants' motion for summary judgment as to Officer Knittel.

**B.** **Arrest of Jose J. Martinez**

    **1.** **Legal Background**

The Fourth Amendment protects "against unreasonable searches and seizures." U.S. Const. amend. IV. Liability for damages under § 1983 only arises upon a showing of personal participation by the defendant. *Starr v. Baca*, 652 F.3d 1202, 1221 (9th Cir. 2011) (internal citation and quotation omitted). Each Defendant's conduct must be independently evaluated.

Qualified immunity shields government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The protection of qualified immunity applies regardless of whether the government official makes an error that is "a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (internal quotation and citation omitted). The doctrine of qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law . . ." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). Because qualified immunity is "an immunity from suit rather than a mere defense to liability . . . it is effectively lost if a case is erroneously permitted to go to trial." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985) (emphasis deleted).

It is well established that "an arrest without probable cause violates the Fourth Amendment and gives rise to a claim for damages under § 1983." *Borunda v. Richmond,* 885 F.2d 1384, 1391 (9th Cir.1988). An officer who makes an arrest without probable cause, however, may still be entitled to qualified immunity if he reasonably believed there to have been probable cause. *See Ramirez v. City of*

*Buena Park,* 560 F.3d 1012, 1024 (9th Cir. 2009). "In the context of an unlawful arrest, then, the two prongs of the qualified immunity analysis can be summarized as: (1) whether there was probable cause for the arrest; and (2) whether it is *reasonably arguable* that there was probable cause for arrest—that is, whether reasonable officers could disagree as to the legality of the arrest such that the arresting officer is entitled to qualified immunity." *Rosenbaum v. Washoe Cnty.*, 663 F.3d 1071, 1076 (9th Cir. 2011) "Framing the reasonableness question somewhat differently, the question in determining whether qualified immunity applies is whether all reasonable officers would agree that there was no probable cause in this instance." *Id.* at 1078.

When responding to a complaint, "officers may not solely rely on the claim of a citizen witness that he was a victim of a crime, but must independently investigate the basis of the witness' knowledge or interview other witnesses." *Peng v. Mei Chin Penghu*, 335 F.3d 970, 978 (9th Cir. 2003). "When there has been communications among [officers], probable cause can rest upon the investigating [officers'] 'collective knowledge.'" *United States v. Del Vizo*, 918 F.2d 821, 826 (9th Cir. 1990) (citation omitted). "The probable cause inquiry is an objective one." *John v. City of El Monte*, 515 F.3d 936, 942 (9th Cir. 2008).

Critically, however, the Court must not lose sight of the summary judgment standard. If facts material to resolving Fourth Amendment "reasonableness" and/or any of the related qualified immunity inquiries are disputed, those facts must be viewed in the light most favorable to the non-moving party. *See Wilkinson v. Torres*, 350 F.3d 546, 951 (9th Cir. 2010).

**2.    Cook's Liability for the Arrest**

It is undisputed that Cook was the officer who took Martinez into custody. PSDUF # 4. Defendants argue that Cook had probable cause to arrest Martinez for a violation of California Penal Code § 422 (a). MSJ at 5-6. Section 422 provides that:

> Any person who willfully threatens to commit a crime which will result in death or great bodily injury to another person, with the specific intent that the statement, made verbally, in writing, or by means of an electronic

6

>communication device, is to be taken as a threat, even if there is no intent of actually carrying it out, which, on its face and under the circumstances in which it is made, is so unequivocal, unconditional, immediate, and specific as to convey to the person threatened, a gravity of purpose and an immediate prospect of execution of the threat, and thereby causes that person reasonably to be in sustained fear for his or her own safety or for his or her immediate family's safety, shall be punished by imprisonment in the county jail not to exceed one year, or by imprisonment in the state prison.

Cal. Penal Code § 422(a).

Cook is not liable under Section 1983 if the information he had at the time would have led a reasonable officer to believe that Jose J. threatened to commit a violent crime against Wester. *Id.*

Cook testified that he found Wester's complaint to be credible based on Wester's representations and Cook's own interactions with the Martinez men. Cook Decl. ¶ 6. It is undisputed that Cook was dispatched to the scene only after Wester contacted law enforcement officials for back-up, that Wester communicated to Cook that Martinez had threatened him, and that Cook signed a citizens' arrest form attesting to this much. PSDUF # 2-3. It is also undisputed that Cook interviewed Wester, as well as each of the Martinez men. PSDUF # 2-4, Martinez Decl., Doc. 37-3, ¶ 14. Plaintiffs do not challenge the fact that Jose J. admitted to Cook at the time that he had cursed at Wester or that Jessie L. told Cook that Jose J. "kind of flipped." Cook Decl. ¶ 5. Plaintiffs also present testimony that when Jose J. was ordered to put his hands up, he did not immediately comply, but first questioned Cook. Jose J. Decl. ¶ 10.

Even accepting Jose J.'s version of the events as true, that Wester fabricated these allegations, does not mean that Cook's *belief* that Martinez threatened Wester, was unreasonable.[2] Cook's probable cause determination was supported by reasonably trustworthy information provided by the alleged victim, a Stanislaus County Animal Control Officer, and statements made by Jose J. and Jessie L. *See Brainerd v. Cnty. of Lake*, 357 F. App'x 88, 90 (9th Cir. 2009). Under these circumstances, it was reasonable for Cook to believe that Jose J. had threatened Wester in violation of § 422(a).

---

[2] Plaintiffs also suggest that Cook's probable cause inquiry was flawed because he did not review the video recorded by Arias. Opposition at 5. Plaintiffs, however, presented evidence showing that Arias was not at the residence at the time of the arrests. Arias Decl. ¶ 9.

7

Thus, the Court GRANTS Defendants' motion for summary judgment as to Cook's arrest of Jose J. Martinez.

**C.     Search of the Premises**

Plaintiffs allege that Defendants' warrantless search of their residence and vehicle violated their constitutional rights. Compl. ¶ 19; Opposition at 3. Defendants dispute that these searches occurred. MSJ at 7. They also assert that the need to protect officers on scene and preserve evidence were exigent circumstances that would have justified a warrantless entry. *Id.*

Defendants state that Fara, Hallford, and Schwandt conducted a "security check" of the premises but did not enter the residence. MSJ at 3-4. They assert that this search was justified because they were looking for evidence (a gun) associated with the crime for which Jose J. was arrested. *Id.* at 7. In support of these assertions, they present the testimony of these officers. Schwandt Decl., Doc. 31-3, ¶ 3 ("I and several other deputies took a look around the property for weapons. I did not enter the plaintiff's residence."); Hallford Decl., Doc. 31-6 ¶ 4 (describing that he "made a security sweep of the premises, looking for weapons and/or individuals that might pose a threat. Neither I or any of the deputies on-scene entered the residence."); Fara Decl., Doc. 31-8 ¶ 4 (describing that he made a "cursory check of the property for weapons and/or other persons that may have posed a threat to officer safety," but "did not enter the plaintiffs' residence."). Defendants also offer Cook's testimony that he did not enter the residence. Cook. Decl. ¶ 7.

Plaintiffs dispute the deputies' assertions that they did not enter Plaintiffs' residence. PSDUF # 8, 10, 12. In support of these assertions, Plaintiffs present the testimony of Jesse L. Martinez that he saw "Sheriffs deputies enter our family residence." Jesse L. Decl., Doc. 37-5, ¶ 13-14. Plaintiffs also present the testimony of Jose J. that he saw Cook "come out of the front door of our family residence." Jose J. Decl., Doc. 37-3, ¶ 13. Jesse L. testified that the officers did not obtain permission or a warrant before entering the residence. Jesse L. Decl. ¶ 13. Jesse L. also testified that the house was in disarray subsequent to the officers' visit to the premises. *Id.* at ¶ 17. The only testimony offered regarding the

8

vehicle is the testimony of Joseph L., stating that his brother told him "that he was seeing Sheriff deputies . . . searching his vehicle . . ." Joseph L. Decl. ¶ 14.

Plaintiffs bear the burden of proof to establish that Defendants conducted the warrantless searches. Since Plaintiffs are the non-moving party, Defendants prevail if they can show there is an absence of evidence to support Plaintiff's case. *Soremekun*, 509 F.3d at 984. Defendants have accomplished this with respect to Fara, Hallford, and Schwandt because Plaintiffs have produced no evidence that these officers were personally involved in the alleged search of the residence. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, (1986) ("Rule 56(e) therefore requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'"). There is a similar absence of evidence with respect to the search of the vehicle. With respect to Officer Cook, however, Plaintiffs have provided evidence (Jose J.'s testimony) that supports that there is a genuine dispute as to whether Cook searched the residence.

Defendants also claim that they are entitled to summary judgment because a search of the house would have been reasonable under the circumstances. MSJ at 7. Defendants argue that "the combination of probable cause and exigent circumstances (officer safety, preservation of evidence, etc.) justifies warrantless entry." *Id.* The Ninth Circuit recognizes that "exigent circumstances are present when a reasonable person would believe that entry . . . was necessary to prevent physical harm to the officers or other persons, the destruction of relevant evidence, the escape of the suspect, or some other consequence improperly frustrating legitimate law enforcement efforts." *Bailey v. Newland*, 263 F.3d 1022, 1033 (9th Cir. 2001) (internal quotations omitted). The *Bailey* Court also recognized, however, that "[t]he government bears the burden of showing the existence of exigent circumstances by particularized evidence, and this burden is not satisfied by mere speculation that the exigency exists." *Id.* Defendants fail to meet this burden here because they fail to point to "particularized" evidence demonstrating that exigent circumstances existed that would have justified a warrantless search of the house. According to

the officers' testimony, all three individuals involved in the altercation were detained by the time the search was conducted, thus they posed no immediate threat. *See* Hallford Decl. ¶ 4. Officers testified that they made a security sweep of the premises to look for weapons and to see if other individuals were present who might have posed a threat. *Id.* After concluding the security sweep of the exterior of the house, the officers were "satisfied [they] were not in any immediate danger." *Id.* Defendants do not present any other evidence that there was an urgent need to preserve evidence or ensure the officers' safety. Especially viewed in a light most favorable to Plaintiff, these facts point to an absence of exigent circumstances.

For these reasons, Defendants' motion for summary judgment regarding the alleged search of the Martinez residence is DENIED as to Cook, and GRANTED as to all other Defendants. The Court GRANTS Defendants' motion for summary judgment as to the alleged search of the vehicle.

**D.      Detention of Jesse L. and Joseph D. Martinez**

Defendants seek summary judgment that officers are not liable under section 1983 for the temporary detentions of Jesse L. and Joseph D. Martinez. MSJ at 7-8. Defendants claim that their detention was reasonable, for safety reasons, under the circumstance.

Officers conducting investigatory stops "may proceed on reasonable suspicion that investigation is called for and may take reasonable measures to neutralize the risk of physical harm and to determine whether the person in question is armed." *United States v. Buffington*, 815 F.2d 1292, 1300 (9th Cir. 1987) (quoting *Terry v. Ohio*, 392 U.S. 24 (1968)). While under "ordinary circumstances, drawing weapons and using handcuffs are not part of an [investigative] stop," the Ninth Circuit recognizes that under some circumstances these actions may be appropriate. *Johnson v. Bay Area Rapid Transit Dist.*, 724 F.3d 1159, 1176 (9th Cir. 2013) (internal quotations omitted). These situations include:

> (1) "where the suspect is uncooperative or takes action at the scene that raises a reasonable possibility of danger or flight;"
> (2) "where the police have information that the suspect is currently armed;"
> (3) "where the stop closely follows a violent crime;" and

(4) "where the police have information that a crime that may involve violence is about to occur."

*Id.*

Defendants present the testimony of Moebs that the brothers were not cooperative, failed to promptly obey commands, and were therefore handcuffed "for officer safety." Moebs Decl., Doc. 31-9, ¶ 3. Moebs also testified officers were investigating a possible "terrorist threat" and were concerned about the presence of firearms. *Id.* at ¶¶ 2-3. Each of these reasons would give the officers reason to believe that handcuffing was a reasonable measure to take under the circumstances.

It is unclear from the Complaint if Plaintiff intended to allege that these detentions were unlawful. Plaintiffs, however, do not oppose Defendants' argument. Moreover, they do not identify any evidence that would show is a genuine issue for trial as to the reasonableness of the detentions.[3] Thus, the Court GRANTS Defendants' motion for summary judgment as to the temporary detention of Jesse L. and Joseph D. Martinez.

E.     **Excessive Force**

   1.     **Legal Background**

Claims against law enforcement officers for the use of excessive force during an arrest are analyzed under the Fourth Amendment's "objective reasonableness" standard. *Graham v. Connor*, 490 U.S. 386, 388 (1989); *Jackson v. City of Bremerton*, 268 F.3d 646, 651 (9th Cir. 2001). The relevant question is "whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to [the officers'] intent or motivation." *Graham*, 490 U.S. at 397. In making this determination, the trier of fact must balance "the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Id.* at 396 (internal quotation marks and citations omitted). In other words, "the type and amount of force inflicted" must be evaluated and weighed against such factors as "(1) the severity of

---

[3] The Court observes that Plaintiffs also fail to provide any evidence identifying which officers were responsible for the detention. Defendants, however, present testimonial evidence that Moebs "may have" been the detaining officer. Moebs Decl. ¶ 3.

11

the crime at issue, (2) whether the suspect poses an immediate threat to the safety of the officers or others, and (3) whether he is actively resisting arrest or attempting to evade arrest by flight." *Chew v. Gates*, 27 F.3d 1432, 1440 (9th Cir. 1994) (citing *Graham*, 490 U.S. at 396). *See Jackson*, 268 F.3d at 651–52.

If a court determines that the alleged conduct violates a clearly established constitutional right, the second step "is to inquire whether the officer was reasonable in his belief that his conduct did not violate the Constitution." *Wilkins*, 350 F.3d at 954-55. "This step, in contrast to the first, is an inquiry into the reasonableness of the officer's belief in the legality of his actions." *Id.* at 955. "Even if his actions did violate the Fourth Amendment, a reasonable but mistaken belief that his conduct was lawful would result in the grant of qualified immunity." *Id.*

**2.   Whether Officers are Liable for Excessive Force as to the Martinez Brothers**

Plaintiffs allege that SCSD officers handcuffed and placed the Martinez brothers in front of running vehicles, exposing them to carbon monoxide fumes. Compl. ¶ 19.[4] In support of these allegations, Joseph D. testified that both he and his brother were "handcuffed near the exhaust of that, I believe, third vehicle for about one hour and thirty minutes while that vehicle's engine was running. Both my brother and I became sick. I suffered with dizziness, inability to breath (*sic.*), anxiety and nausea." Joseph D. Decl. ¶ 16. Jessie L. testified similarly that he and his brother were "placed by near the exhaust of a patrol vehicle with its engine running and left there for what seemed like a very long time, I got nauseated, scared, anxious and my head hurt." Jessie L. Decl. ¶ 15.

Defendants claim that they are entitled to summary judgment as to the Martinez brothers' claims that officers used excessive force in their detention. MSJ at 9. Defendants claim, "no force was used on any plaintiffs except the minimum amount necessary to detain and handcuff." *Id.* at 2.

---

[4] Plaintiffs also allege that Joseph D. was "lifted by arms handcuffed behind his back by Defendant Sheriff Deputies causing injury to this Plaintiff left collar bone area." Compl. ¶ 19. Plaintiffs, however, do not provide any evidence supporting this allegation.

12

Parties do not point to any controlling case law regarding excessive force and detention-related proximity to exhaust fumes. [5] Nevertheless, the Supreme Court is clear that "officials can still be on notice that their conduct violates established law even in novel factual circumstances." *Hope v. Pelzer*, 536 U.S. 730, 741 (2002). Where there is no case directly on point, "existing precedent must have placed the statutory or constitutional question beyond debate." *C.B. v. City of Sonora*, 769 F.3d 1005, 1026 (9th Cir. 2014) (quoting *Ashcroft v. al–Kidd*, 131 S. Ct. 2074, 2083 (2011).

The Court finds the handcuffing case law to be relevant to the facts of this case. It is clear that handcuffing alone does not violate a detainee's Fourth Amendment rights. *See Dillman v. Tuolumne Cnty.*, No. 1:13-CV-00404 LJO, 2013 WL 1907379, at *8 (E.D. Cal. May 7, 2013). However, handcuffing may be actionable where a plaintiff claims his complaints about were ignored. *Compare Wall v. County of Orange*, 364 F.3d 1107, 1109–12 (9th Cir. 2004) (arrestee suffered nerve damage as a result of continued restraint in tight handcuffs after requesting officer loosen handcuffs); *LaLonde v. County of Riverside*, 204 F.3d 947, 952, 960 (9th Cir. 2000) (arrestee complained to officer who refused to loosen handcuffs); *Palmer v. Sanderson*, 9 F.3d 1433, 1434–36 (9th Cir.1993) (arrestee's wrists were discolored and officer ignored his complaint), with *Hupp v. City of Walnut Creek*, 389 F.Supp.2d 1229, 1233 (N.D.Cal. 2005) (denying summary judgment in the absence of "evidence of a physical manifestation of injury or of a complaint about tight handcuffs that was ignored"); *Burchett v. Kiefer*, 310 F.3d 937, 945 (6th Cir. 2002) (refusing to find a constitutional violation where officers immediately acted after arrestee complained that handcuffs were too tight). Consistent with these cases. The Court finds that the act of handcuffing the brothers and placing them on the ground next to a car would not violate a clearly established right absent evidence of a noticeable physical manifestation of injury or of a complaint that was ignored. *See Hupp*, 389 F. Supp. 2d 1229, 1233 (N.D. Cal. 2005). Here, Plaintiffs do not claim that they notified any of the Defendants of their discomfort, requested to be moved, or

---

[5] The one similar case this Court could find, *Settles v. McKinney*, is materially different in that the plaintiff alleged he was also hit over the head. No. 3:12CV-P368-H, 2013 WL 2151560, at *4-5 (W.D. Ky. May 16, 2013).

suffered in such a way that would be noticeable to officers. While Joseph D. testifies that he experienced back pain and wrist swelling after the event, he does not claim that his symptoms manifested at the time in a way that would have put the officers "on notice" that they may have been violating a clearly established right. Similarly, Jessie L. claims that he became sick, but does not claim that there was any reason for officers to have been aware of his discomfort.

Additionally, Plaintiffs' claims as to Hallford, Fara, and Schwandt fail in the face of the officers' testimonial evidence that they did not participate in the detention of either brother. Hallford Decl. ¶ 3; Fara Decl. ¶ 4; Schwandt Decl. ¶ 2. Plaintiffs fail to identify any evidence that would create a genuine dispute as to this matter.

For these reasons, the Court GRANTS Defendants' motion for summary judgment as to the Martinez brothers' excessive force claim.

**3. <u>Whether Cook is Liable for Use of Excessive Force Against Jose J. Martinez</u>**

Defendants seek summary judgment that officers are not liable under section 1983 for the use of excessive force against Jose J. Martinez. MSJ at 9. Defendants claim that "no force was used on any plaintiffs except the minimum amount necessary to detain and handcuff." *Id.* at 2. In support of this claim, Cook testified that "the only force I used against Jose Martinez was to place him in cuffs." Cook Decl. ¶ 7. It is unclear from the Complaint if Plaintiff intended to allege an excessive force claim based on the events surrounding Jose J.'s arrest.

Plaintiffs, however, provide evidence in the form of Jose J.'s testimony that Cook "slammed the patrol vehicle door on [his] ankle," as he was put into the back of the patrol car. Jose J. Decl. ¶ 10. Defendants argue that this fails to create a genuine issue of fact because there is no evidence that the car door was slammed intentionally. Defendants' Reply, Doc. 41, at 3 (quoting *Brower v. Cnty. of Inyo*, 489 U.S. 593, 596 (1989)). This argument does not help Defendants, however, in the context of their motion for summary judgment. Plaintiffs point to no evidence of their own that would support their assertion that the car door accidentally hit Jose J.'s ankle. Therefore, because the Plaintiffs are the non-moving

party, their burden is merely to show that there is a dispute as to whether Cook used force beyond placing Jose J. into handcuffs. Plaintiffs meet this burden by pointing to Jose J.'s testimony. PDSUF #4-5, Jose J. Decl. ¶ 10. While the testimony does not specifically allege that Cook acted intentionally, because Plaintiffs are the non-moving party, the facts are construed in their favor.

Thus, the Court GRANTS Defendants' motion for summary judgment as to Cook's use of force used to arrest Jose J. Martinez.

### VII. CONCLUSION AND ORDER

The Court GRANTS Defendants' motion for summary judgment as to Defendants Thomas Moebs, Tom Fara, Donnie Schwandt, Joseph Knittel, and John Hallford.

As to Defendant Jason Cook, the Court GRANTS Defendants' motion for summary judgment as to claims based on the arrest of Jose J. Martinez and the detention and use of force of the Martinez sons, but DENIES Defendants' motion for summary judgment as to claims based on the alleged search of the Martinez residence and the force used to arrest Jose J. Martinez.

Defendants did not move for summary judgment as to Defendant Timothy Wester. Therefore, all charges remain against him.

IT IS SO ORDERED.

Dated:   **April 17, 2015**          /s/ Lawrence J. O'Neill
                                      UNITED STATES DISTRICT JUDGE